IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONY B. ROSS,

Plaintiff,

vs.                                    Case No. 19-2690-SAC

PENTAIR FLOW TECHNOLOGIES, INC.,

Defendant.

MEMORANDUM AND ORDER

After the plaintiff Tony B. Ross ("Ross") filed his amended
employment discrimination complaint asserting actions under 42 U.S.C. §
2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and state
common-law retaliation, the defendant Pentair Flow Technologies, Inc.
("Pentair") filed its Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss with
supporting memorandum. ECF## 13 and 14. On the plaintiff's count one
action of "prohibited discrimination" in violation of Title VII and § 1981,
(ECF# 10), Pentair argues the plaintiff has not administratively exhausted
his "vague claim" for failure to promote under Title VII and has otherwise
failed to allege facts adequate to sustain an inference of discrimination.
ECF# 13. On the plaintiff's count two of "prohibited retaliation" in violation of
Title VII and § 1981, (ECF# 10), Pentair argues the plaintiff has not alleged
facts showing an actionable adverse action or a causal connection between
any adverse action and alleged protected activity. ECF# 13. On the plaintiff's
count three state common-law retaliation, Pentair argues the plaintiff has

1

failed to allege Pentair's violation of any specific and definite rule, regulation or law. The matter is ripe for decision. ECF# 13.

**Amended Complaint's Factual Allegations**

Ross started working for Pentair on May 23, 2018, and he continues to be employed there. His allegations against Pentair concern actions taken against him while working as an "utility blaster." The first alleged action occurred in June of 2018, when Ross asked his manager Shane Faherty for a safety item. Faherty did provide Ross with a cooling vest but also said, "I take care of my good help." Ross alleges Faherty's statement was racially motivated, because he sees a connection between it and the contemporary movie, "The Help," which is "about Black servants who worked in white homes." ECF# 10, ¶ 32.

Later in June of 2018, Ross asked Faherty to signal him in order to get his attention when he was using the blaster. The plaintiff alleges Faherty then later threw a board hitting him. This led Ross to ask that Faherty stop throwing things at him, and he repeatedly complained to Faherty about this method of getting his attention. The plaintiff alleges Faherty did not throw and strike Non-African American employees who were "in the same position as Plaintiff when they were working." ECF# 10, ¶ 37.

In November of 2018, Ross asked Faherty for Pentair to provide him with insulated boots for safety and medical purposes. This upset Faherty who responded, "this job may not be for him [Ross]." ECF# 10, ¶ 41. When

the plaintiff explained he needed the boots due to a recent medical procedure, Faherty became "more furious" with this explanation. *Id.* at ¶ 43. Ross alleges "non-African American employees who were similarly situated to him" were given boots and other safety equipment without facing a manager's opposition. *Id.* at ¶ 44.

Ross reported Faherty's different treatment of him to management and Faherty's supervisor, Andrew Pepperdine. *Id.* at ¶¶ 45-46. Faherty's treatment of Ross then worsened in that he "micromanaged" Ross, "excessively and arbitrarily" criticized plaintiff's performance, and watched Ross use the bathroom on December 12. *Id.* at ¶¶ 47-49. Ross continued to report Faherty. *Id.* at ¶ 50. Ross experienced "great fear" when Faherty threw a bucket at him on December 17, and Ross again asked Faherty to stop throwing things because he has "PTSD and receives treatment for such condition." *Id.* at ¶¶ 51-52.

Faherty began reprimanding Ross over job speed and production and accusing Ross of policy violations for "common practices" in the workplace which "no non-African American similiarly situated employee had ever been disciplined." *Id.* at ¶¶ 53-54. Faherty "falsely accused" Ross of "misconduct," and Ross was questioned by Pepperdine and Steve Wilson without having union representation present. *Id.* at ¶¶ 55-56. Human resources questioned Ross over Faherty's claim of being afraid of Ross, and the plaintiff was suspended for three days during this investigation. *Id.* at ¶¶

57-58. "When Plaintiff spoke to HR about his issues with Faherty, he was threatened with termination if he continued to pursue action." *Id.* at ¶ 60. "After making complaints to management and filing the EEOC charge, the treatment he received at work worsened and began to increase in frequency and severity." *Id.* at ¶ 61. "Ross is still employed by Pentair and continues to receive the treatment he has complained about without resolution." *Id.* at ¶ 62. "Ross along with several co-workers has repeatedly voiced their concerns regarding the dangerous working conditions and the extreme risk of danger but Pentair has taken no action to rectify the issues while unjustly reprimanding and denying Mr. Ross promotional opportunities despite his qualifications." *Id.* at ¶ 64. Finally, Ross alleges he "continues to work in a hostile environment that causes him fear, stress and anxiety." *Id.* at ¶ 65. The above are his factual allegations common to his three counts.

Under count one, Ross also alleges Pentair harassed him and intentionally discriminated against him "based on his race." *Id.* at ¶¶ 67-70. "Defendant denied and continues to deny Plaintiff of employment opportunities." *Id.* at ¶ 71. Pentair did not treat Ross equally and intentionally discriminated against him in its application of "workplace policies." *Id.* at ¶¶ 74-75. Management level employees racially discriminated against Ross by "repeated assaults . . . as a pattern or practice of getting Plaintiff's attention," by "failing to promote Plaintiff to a position he applied to and was qualified for and filling it with non-African American

employees who were not more qualified than Plaintiff," by "[a]rbitrarily reprimanding Plaintiff for engaging in . . . job performance and behaviors common with all employees," by "[h]olding Plaintiff to a higher standard" in managing and evaluating his performance; by "arbitrarily withholding safety equipment and training from Plaintiff" differently from non-African American similarly situated employees. *Id.* at ¶ 78. In summary, Ross alleges Pentair acted on racially discriminatory intent against him by applying workplace policies, by assaulting him to get his attention, by failing to promote, by managing and evaluating his performance, and by withholding safety equipment and training.

Under count two, Ross alleges he engaged in protected activity "by reporting discrimination, safety concerns and other issues within the facility" and by raising "numerous complaints of race discrimination and other lawful conduct with Defendant." *Id.* at ¶¶ 82-83. Pentair retaliated by ignoring and failing to investigate Ross's complaints and by his supervisor assaulting him, failing to promote him, managing and evaluating him by higher standards, by withholding safety equipment and training, by suspending and investigating him for misconduct, and by reprimanding and threatening to terminate him for continuing his reporting. *Id.* at ¶ 84. Ross alleges his protected activity opposing discrimination was a motivating factor behind Pentair's retaliation. *Id.* at ¶ 85.

Finally, under count three, Ross alleges he "engaged in protected activity by reporting safety issues and other workplace concerns to corporate management and outside the facility." *Id.* at ¶ 89. Ross "reported how management was arbitrarily and inconsistently applying safety rules toward non-African American similarly situated employees which was leading to increased injuries." *Id.* at ¶ 90. He asserts to having reasonably believed that Pentair was committing safety violations and in good faith reported them to Pentair's corporate management and union officials. Ross alleges his conduct is protected due to Kansas public policy on workplace safety, on providing safety devices, and on reporting safety violations to the secretary of labor. He also points to the Kansas statute that makes it unlawful for an employer to discharge or "to discriminate in any way against any employee because" of testifying before, petitioning for, or bringing to the attention of the secretary of labor a relevant "matter of controversy." *Id.* at ¶ 94. Ross alleges Pentair denied him "employment opportunities and other benefits" because of his reporting. *Id.* at ¶ 95.

### Rule 12(b)(6) Standards

The court accepts as true the factual allegations in the complaint and draws reasonable inferences in favor of plaintiff. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). The court is not obliged to accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009) (citation omitted). To survive a motion to dismiss, the complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Twombley*, 550 U.S. at 570. Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Simply put, a court is not to accept alleged legal conclusions as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

"Plausibility" looks at whether the facts alleged in the complaint are so general or so innocent that the plaintiffs "'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether a plausible claim has been stated, the court performs "a context-specific task" drawing on its "judicial experience and common sense." *Id.* a 679 (citation omitted). And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED.R.CIV.P. 8(a)(2)).

Rule 12(b)(6) does not create a prima facie case pleading requirement, but the court may look to those elements in determining plausibility. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). The elements for racial discrimination suits under Title VII and § 1981 are the same. *Payan v. United Parcel Service*, 905 F.3d 1162, 1168 (10th Cir. 2018). The plaintiff's complaint does not allege a direct-evidence violation and so the following elements to a prima facie case of disparate treatment discrimination may be helpful in determining plausibility, that he is: (1) a member of a protected class, (2) who suffered an adverse employment action, (3) who was qualified for the position at issue, and (3) who was treated less favorably than others not in the protected class. *See Khalik*, 671 F.3d at 1192.

Section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). Title VII principles for retaliation claims "apply with equal force" to § 1981 claims. *Id.* (internal quotation marks omitted). Absent direct evidence, the prima facie case under the burden-shifting framework applies. To state a prima facie case of retaliation under Title VII, a plaintiff would need to prove that he: (1) engaged in protected opposition to discrimination, (2) sustained what a

reasonable employee would find to be a materially adverse action, and (3)

has evidence supporting a reasonable inference of a causal connection

between the protected activity and the materially adverse action. *Id.* at

1220. The court will discuss the Kansas common-law retaliation claim later.

The Tenth Circuit recently summarized what suffices for pleading

a discrimination claim:

> A complaint raising a claim of discrimination does not need to
> conclusively establish a prima facie case of discrimination, but it must
> contain more than "'[t]hreadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements.'" *Khalik* [*v. United
> Air Lines*], 671 F.3d [1188] at 1193 [(10th Cir. 2012)](quoting
> *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868
> (2009)). "While we do not mandate the pleading of any specific facts
> in particular," a plaintiff must include enough context and detail to link
> the allegedly adverse employment action to a discriminatory or
> retaliatory motive with something besides "sheer speculation." *Id.* at
> 1194. "[A] plaintiff should have"—and must plead—"at least some
> relevant information to make the claims plausible on their face." *Id.* at
> 1193. Thus, it is insufficient for a plaintiff to allege, for instance, that
> she did not receive an employment benefit that "similarly situated"
> employees received. *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164
> (10th Cir. 2014). A plaintiff's assertion that she is "similarly situated"
> to other employees is "just a legal conclusion—and a legal conclusion
> is never enough." *Id.* Rather, a plaintiff must allege "some set of
> facts"—not just legal conclusions—"that taken together plausibly
> suggest differential treatment of similarly situated employees." *Id.*
> "Pleadings that do not allow for at least a reasonable inference of the
> legally relevant facts are insufficient." *Burnett v. Mortg. Elec.
> Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal
> quotation marks omitted).

*Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019).

**Conclusory Allegations**

The court follows the Tenth Circuit's lead in *Khalik* and sets out

the plaintiff's allegations that will not be assumed true because they are

conclusory in large part. Due to the number of the plaintiff's allegations subject to this rule, they are listed by their paragraph number:  29, 45, 55, 63-64, 71-79, 82-87, and 89-98. ECF# 10. The court understands the plaintiff may not have intended what appears after ¶ 65 to be factual allegations. Still, the plaintiff chooses to incorporate conclusory factual allegations there which do not appear and are not expounded upon elsewhere in his pleading. The court, in determining plausibility, shall disregard the plaintiff's speculation that he experienced race discrimination and harassment and his conclusory allegations that he was similarly situated, that he was "falsely accused," that he was "required to work in dangerous conditions," and that he was put "in the extreme risk of danger . . . while unjustly reprimanding and denying  . . . promotional opportunities despite his qualifications." *Id.* These allegations are factually threadbare legal conclusions devoid of a factual context from which to draw reasonable inferences. The court will discuss these pleading deficiencies more later in the order.

**Title VII Failure to Promote Claim—Counts One and Two**

Pentair argues the plaintiff wants to bring a failure to promote claim without alleging he applied for and was qualified for a promotion and without alleging who received this promotion instead of him. Pentair first challenges that Ross did not allege any failure to promote claim in his administrative charge of discrimination. Therefore, he is barred from

bringing this claim under Title VII for failure to exhaust administrative remedies.

Ross attaches a copy of his administrative charge of discrimination to his amended complaint. ECF# 10-1, p. 5. On a Rule 12(b)(6) motion, the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). His administrative charge plainly does not allege the denial of a promotion. "Failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust." *Lincoln v. BNSF Railway Company*, 900 F.3d 1166, 1185 (10th Cir. 2018). Therefore, "the court must dismiss only if the issue has been properly presented for decision." *McQueen ex rel. McQueen v. Colorado Springs School Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 918-19 (2007)). The plaintiff does not contest the propriety in deciding this affirmative defense on the filings and record as presented.

The Tenth Circuit recently summarized the principles guiding this determination:

> The exhaustion rule derives from two principal purposes: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994), abrogated on other grounds by *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003). To advance these

purposes, after a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie* [*v. City & Cty. of Denver*], 414 F.3d [1266] at 1274 [(10th Cir. 2005)]. While we "liberally construe" the plaintiff's allegations in the EEOC charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (emphasis added). The ultimate question is whether "the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993), <u>overruled on other grounds as recognized by</u> *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003).

*Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164-65 (10th Cir. 2018). Because his claims are generally limited to those coming within the scope of his administrative charge, it is critical to note first that Ross did not include any facts or allegations in that charge pointing to a discriminatory or retaliatory failure to promote.

More importantly, the court does not find that the plaintiff's failure to promote claim "was within the scope of the administrative investigation that would 'reasonably be expected to follow from the discriminatory <u>acts</u> alleged in the administrative charge.'" *Id.* at 1165 (quoting *Jones*, 502 F.3d at 1186 (emphasis in original)). "[T]he reasonable and likely scope of the investigation is determined by the allegations contained in the Charge itself." *Id.* at 1165 (citation and emphasis omitted). "Because EEOC Charges are traditionally filed by non-attorneys, we have repeatedly emphasized that the Charges should be liberally construed at all

levels of their review." *Smith*, 904 F.3d at 1166 (internal quotation marks and citations omitted). The plaintiff's administrative charges here allege his supervisor harassed and discriminated against him by throwing things, by referring to him as "good help," by writing him up and reporting him to human resources in November of 2018, and by writing him up and coercing him to sign a statement admitting to a job performance deficiency in January of 2019. ECF# 10-1, p. 5. He also alleges that he has reported these incidents and no corrective action has been taken. A liberal construction of these charges does not include a failure to promote claim based on racial discrimination or retaliation. *See, e.g.*, *Ross v. Pentair*, 2019 WL 6700402 at *3 (D. Kan. Dec. 19, 2019); *Tilmon v. Ralph Lauren Retail, Inc.*, 2019 WL 2103176 at *6 (D. Kan. May 14, 2019).

"'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."'" *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (in Title VII context, quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). As the Tenth Circuit has said, "dismissal based on a failure to exhaust administrative remedies should be without prejudice." *Smith*, 904 F.3d at 1166 (emphasis and citation omitted). Thus, the court dismisses without prejudice the plaintiff's

Title VII claims for failure to promote based on racial discrimination and/or retaliation.

## § 1981 Discrimination Claim for Failure to Promote—Counts One and Two

For a prima facie claim of discriminatory failure to promote, the elements are that the plaintiff (1) belongs to a protected class, (2) applied for an available promotion for which he was qualified, and (3) was "rejected under circumstances which give rise to an inference of unlawful discrimination." *Tabor v. Hilti*, 703 F.3d 1206, 1216 (10th Cir. 2013) (internal quotation marks and citation omitted). The plaintiff alleges no more than the conclusions that the defendant failed to promote him "to a position he applied to and was qualified for and filling it with non-African American employees who were not more qualified than" him. ECF# 10, ¶ 78. While these allegations recite the elements of a prima facie case, they are factually threadbare. These allegations are insufficient because they offer no more than "the mere metaphysical possibility" of the plaintiff proving "some set of facts." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). There is nothing alleged from which one could identify the available promotions in question. Nor could one know that Ross either expressed an interest in an available promotion for which he was qualified or that Pentair knew he was interested in such a promotion. Consequently, one cannot infer, but only speculate, unlawful discrimination from the promotion going to another. *See Robles v. Amarr Garage* Doors, 2012 WL 4867289, at

* 6 (D. Kan. Oct. 15, 2012), *aff'd,* 509 Fed Appx. 741 (10th Cir.), *cert. denied*, 571 U.S. 838 (2013); *Smith v. United Parcel Serv.*, 2014 WL 1213466, at *5 (D. Colo. Feb. 27, 2014), *report and recommendation adopted in part, rejected in part*, 2014 WL 1213806 (D. Colo. Mar. 24, 2014).

The plaintiff's excuse for not alleging more details is that he was not privy to the defendant's decision-making process. This excuse rings hollow when he does not allege the following basic, but essential, details that should be well within his scope of knowledge. Specifically, he should be able to allege which promotional opportunities he was passed over, what qualifications he had for them, and who received the promotions. The plaintiff also characterizes this claim as "one of several continuing actions alleged against the Defendant, which also includes allegations of unlawful suspension, and other arbitrary disciplinary actions." ECF# 16, p. 8. The plaintiff's complaint fails to allege any circumstances connecting these "other actions" to any denial of promotion. Without any details about these missed promotions, any alleged connection remains sheer speculation. Having failed to allege the facts necessary for an inference of discrimination, the plaintiff does not state a plausible denial of promotion claim for relief under 42 U.S.C. § 1981 and Title VII, in either count one or count two. Pentair's motion to dismiss is granted.

**Title VII and § 1981 Claim for Disparate Treatment-Count One**

When "the method chosen by [the plaintiff] to raise an inference of discrimination" is disparate treatment of similarly situated persons, the court may properly evaluate the plaintiff's claim against that standard. *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173-74 (10th Cir. 2005). As already stated, a prima facie case of disparate treatment discrimination, using the method chosen by the plaintiff, requires proof that he is a member of a protected class, has sustained an adverse employment action, was qualified for his position, and was treated less favorably than others not in the protected class. *Khalik*, 671 F.3d at 1192. Pentair argues that the plaintiff's conclusory allegation that he was treated differently from a similarly situated non-protected employee is insufficient to create an inference of discrimination without additional factual details "such as who was treated differently, when they were treated differently, or how they were treated differently." ECF# 14, p. 9 (quoting *Richardson v. Kellogg Co.*, 2014 WL 7338844, at *8 (D. Kan. Dec. 22, 2014)("There is nothing but 'sheer speculation' to link the denial of retirement and medical benefits to discrimination or retaliation." (quoting *Khalik*, 671 F.3d at 1194)). Pentair notes that the plaintiff has not alleged any information identifying who was similarly situated and what were the relevant circumstances under which they were treated differently. Pentair asks the court to dismiss the plaintiff's conclusory allegations under count one.

This court recently summarized the Tenth Circuit law governing

this issue:

> A plaintiff must include enough context and detail to link the alleged discriminatory action to a discriminatory motive with something besides sheer speculation. *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019). An allegation of similarly situated persons is just a legal conclusion which is not sufficient to support a claim. *Id.* at 1275. Here, the amended complaint fails to allege facts showing similarly situated tenants were treated differently. *See id.* at 1275 (allegation that non-reprimanded doctors were similarly situated because they sent similar emails on similar issues is too conclusory to permit a reasonable inference of differential treatment); *Hwang v. Kansas State University*, 753 F.3d 1159, 1164 (10th Cir. 2014)(that some non-disabled University employees received sabbaticals is not sufficient to allege a disabled plaintiff who did not receive a sabbatical is similarly-situated to those employees); *see also McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)(officers who made different mistakes and engaged in different conduct with regard to a prison suicide were not similarly situated for the purposes of showing disparate treatment).

*Ngiendo v. Pep-KU, LLC*, No. 18-4127-SAC-TJJ, 2019 WL 3430570, at *6 (D.

Kan. July 30, 2019), *appeal filed*, (10th Cir. Oct. 23, 2019). In affirming

dismissal for failure to allege a plausible claim, the Tenth Circuit in *Khalik*

similarly observed, "[t]here are no allegations of similarly situated

employees who were treated differently." 671 F.3d at 1194. The panel

explained its ruling in these terms:

> While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. For instance, Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her. She should know generally when she complained about not receiving leave and when she was terminated. She should know details about how Defendant treated her compared to other non-Arabic or

> non-Muslim employees. She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual. She should know who grabbed her by the arm, what the context for that action was, and when it occurred. She should know why she believed that action was connected with discriminatory animus. She should know who she complained to about the discrimination, when she complained, and what the response was. She should know who criticized her work, what that criticism was, and how she responded. But in fact, Plaintiff offers none of this detail. To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include some further detail for a claim to be plausible. Plaintiff's claims are based solely on the fact that she is Muslim and Arab–American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her. Without more, her claims are not plausible under the *Twombly/Iqbal* standard.

*Khalik*, 671 F.3d at 1194. The Tenth Circuit has said: "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir.1997) (citation omitted) (discussing disparate treatment claim); *see Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540-41 (10th Cir. 2014)(similarly situated means sharing the same supervisor or decision maker and being "disciplined for conduct of comparable seriousness").

The plaintiff repeatedly refers to "similarly situated" employees but provides no factual context to support his legal conclusion that they are "similarly situated." The plaintiff puts forward no alleged details of "any comparable incident(s) or behavior" of other employees of a different race that were handled differently. *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1119 (D.N.M. 2011). General allegations of different treatment with no

further detail regarding who these employees are or why they are similarly situated "is insufficient to raise a viable claim of discrimination because they are wholly conclusory and provide only a formulaic recitation of the elements of a claim." *Koppenhaver v. Unified Sch. Dist. No. 500*, 2013 WL 1704917, at *5 (D. Kan. Apr. 19, 2013); *see Shamaleki v. Kansas State University*, 147 F. Supp. 3d 1239, 1245 (D. Kan. 2015) ("Plaintiff does not allege that the non-Iranian students who were afforded appeals were similarly situated to him, or provide any details as to who these students were."). The amended complaint offers no factual context from which this court could infer that non-African American employees were dealing with the same supervisor and were being held to the same performance evaluation and discipline standards as the plaintiff. *See Palmer v. Pentair*, 2019 WL 3239350, at *6-*7 (D. Kan. Jul. 18, 2019) ("Although plaintiff alleges that non-African-American coworkers were not subjected to discipline, there is no allegation that any of those coworkers were similarly-situated to plaintiff to support an inference of discrimination.").

In responding that his allegations are sufficient and that he believes the different treatment was due to his race, the plaintiff does not move his claims from speculative to plausible. He argues that he has "stated how management treated him in comparison to similarly situated employees such as but not limited to 'throwing and striking him with items while working, and not providing him with safety equipment were a few examples

given.'" ECF# 16, p. 9 (citing ¶¶ 26-65 of the amended complaint ECF# 10).

A plain reading of the amended complaint reveals what the plaintiff calls "a few examples" may be the only instances when he comes close to alleging enough for inferring a discriminatory motive from the treatment of similarly situated employees.

With regards to the safety equipment, the plaintiff's amended complaint, however, does not affirmatively allege which of his requests for safety equipment were denied, when they were denied, who denied them, and how his requests were like the safety equipment requests made by similarly situated non-African American employees that were granted. He does allege requesting safety boots from Faherty, but he does not allege that Faherty denied his request, but only opposed it. Nor does he allege any details as to when Faherty did not oppose safety equipment requests made by non-protected employees, who the requesting employees were, and what were the safety equipment requests. Without such details, the claim is not plausible in showing a discriminatory motive.

With regards to Faherty throwing things at him, the plaintiff alleges that "Faherty did not throw and strike non-African American employees with items in the same position as Plaintiff when they were working." ECF# 10, ¶ 37. And then at ¶ 39, the plaintiff alleges, "No other non-African American utility blaster was treated in the same manner or subjected to similar hostile working conditions despite numerous complaints

both to Faherty, HR, and other members of management about the treatment he was receiving." While these allegations are still lacking in detail, the court accepts the plausibility of the plaintiff knowing from his own work experience that Faherty threw things at him to get his attention or to harass him and did not throw things at other utility blasters in the same way. The simple inference to be drawn from this allegation of Faherty's fact-specific behavior is not subject to the same varying circumstances as the plaintiff's other alleged incidents of discrimination. As for the plaintiff's remaining allegations of the "defendant's" treatment of other employees, the plaintiff does not allege enough details to show similarly situated employees being treated differently as to create an inference of discrimination. The allegation of Faherty's stray reference to "good help" is not enough to push his other allegations from possible to plausible. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir.)(comments that are isolated or ambiguous may be treated as too abstract to sustain an inference of discrimination), *cert. denied*, 531 U.S. 876 (2000). Nor has the plaintiff alleged a connection between Faherty throwing things and the other allegations against the "defendant" as to sustain an inference of discrimination. While the court's discussion of this count leaves the plaintiff with a disparate treatment claim based on Faherty throwing things at him, the next section of its order has the court concluding that the throwing of things does not constitute an adverse employment action. Thus, court finds

the plaintiff does not assert a plausible disparate treatment claim for race discrimination. *See Jackson-Cobb v. Sprint United Mgt.*, 173 F. Supp. 3d 1139, 1146 (D. Colo. 2016), judgment entered, 15-CV-01308-MJW, 2016 WL 1296192 (D. Colo. Mar. 29, 2016). Count one is dismissed.

**Title VII and § 1981 Claim for Retaliation—Count Two**

Pentair seeks to dismiss this count arguing Ross "has not sufficiently alleged any actionable adverse action . . ., let alone any adverse action that is causally connected to any alleged protected activity." ECF# 14, p. 10. Thus, Pentair takes aim at two elements of the prima facie case of retaliation: that Ross has alleged facts showing that a reasonable employee would find the challenged action to be materially adverse, and that Ross has alleged facts showing a causal connection between the protected activity and the materially adverse action. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d at 1220.

In keeping with the purposes behind these statutory remedies, the Tenth Circuit "broadly define[s] adverse employment action":

> We have stated that adverse employment actions "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (internal quotation and citation omitted). We have also recognized that monetary losses take a variety of forms including shifts in compensation or benefits. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

*Orr v. City of Albuquerque*, 417 F.3d 1144, 1150 (10th Cir. 2005). "In so defining the phrase, we consider acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (internal quotation marks and citation omitted). The Tenth Circuit takes "a case-by-case approach" looking at the factors unique to the situation, but without considering what are "mere inconvenience[s] or an alteration of job responsibilities." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks and citation omitted).

An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). On the other hand, The Tenth Circuit has found:

> Moreover, with regard to MacKenzie's claim that Gourley's "silent treatment" towards her was in retaliation for her filing a grievance against him, we conclude mere passive treatment does not constitute an adverse employment action. *See Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 428 (8th Cir.1998) (shunning is not an adverse employment action where the plaintiff did not allege that the ostracism resulted in a reduced salary, benefits, seniority, or responsibilities); *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 693 (8th Cir.1997). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (quotation omitted). Lastly, MacKenzie's claim that Gourley retaliated by moving her desk forty-five degrees is equally without merit. Even if retaliatory, (unlikely given the explanation), it is de minimis.

Consequently, we are left only to consider whether MacKenzie's "below expectations" job performance rating and one-day suspension, which are adverse employment actions, were retaliatory.

*MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005), abrogated on other grounds by, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). "'[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 68.).

Pentair points to the plaintiff's opening allegations that the defendant retaliated by ignoring and not investigating his repeated complaints of discrimination and retaliation. Citing *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010), Pentair argues conduct like ignoring an employee's complaints is not adverse action. The Tenth Circuit's analysis in *Johnson* was grounded on this, that "'Title VII protects individuals "not from all retaliation" but only from retaliation "that produces an injury or harm"' that itself raises to a "'level of seriousness."' *Id.* (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007) (quoting in turn *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 67)). Thus, requiring a level of adversity that a reasonable employee would regard materially adverse "is necessary to separate significant from trivial harms,

petty slights, minor annoyances, and simple lack of good manners, . . .

[and] [o]therwise, minor and even trivial employment actions that an

irritable, chip-on-the-shoulder employee did not like." *Id.* (internal quotation

marks and citations omitted). The court held that supervisors giving the cold

shoulder or silent treatment, snubbing and shunning an employee are not

enough to state a claim for retaliation. *Id.* The court agrees that on the facts

as alleged here, the plaintiff has not stated a plausible claim for retaliation

based on ignoring him and not investigating his complaints. *See Daniel v.*

*United Parcel Service, Inc.*, 797 F. Supp. 2d 1163, 1195-96 (D. Kan. 2011),

*aff'd*, 701 F.3d 620 (10th Cir. 2012).

The plaintiff's amended complaint lists the following as

retaliatory behavior:  throwing things at him, "nitpicking his work and

micromanaging him," withholding safety equipment and training, suspending

and investigating him for misconduct, and reprimanding him and threatening

termination. The court agrees with Pentair that most of this alleged behavior

simply does not reach what a reasonable employee could regard as

materially adverse. The plaintiff's allegations of Faherty occasionally

throwing things at him simply do not show that a reasonable employee

operating a utility blaster could regard such behavior to be injurious or to be

anything more than minor, irritable, and annoying behavior. It is not the

plaintiff's "fears" that matter but whether the facts show circumstances that

Faherty's conduct rose to the level of seriousness such that a reasonable

employee would regard it as serious too, and not merely annoying. The court concludes the same as to the plaintiff's conclusory allegations about nitpicking and micromanaging. There is nothing alleged to show here such seriousness that a reasonable employee would be dissuaded from making or supporting a complaint of discrimination. *See Keller v. Crown Cork & Seal USA, Inc.*, 491 Fed. Appx. 908, 914 (10th Cir. Aug. 8, 2012) ("strict application of policies, increased supervision, write-ups, means and methods of communication with her supervisors," do not rise to materially adverse actions because they "are in the nature of ordinary workplace tribulations."), *cert. denied*, 568 U.S. 1230 (2013); *DeWalt v. Meredith Corp.*, 288 Fed. Appx. 484, 494 (10th Cir. Jul. 31, 2008) (feeling nitpicked does not qualify as an adverse employment action). As to the withholding of safety equipment and training, the court again is in the dark as to what the plaintiff is alleging here. The court is given no factual context for knowing what kind of safety equipment was withheld and under what circumstances. The court will not speculate that a reasonable employee could be dissuaded from making a discrimination complaint by reason of being denied something that the plaintiff does not allege in adequate detail. As for Faherty opposing plaintiff's request for safety boots, there is nothing alleged here to show that this reaches the significant level of adversity needed to be an adverse employment action rather than merely annoying and insensitive behavior.

This leaves plaintiff's allegations of Faherty reprimanding him, of HR suspending and investigating him for misconduct on Faherty's complaint, and of HR threatening his termination, while he discussed his issues with Faherty, "if he continued to pursue action," (ECF# 10, ¶ 60). These allegations have Faherty manufacturing reprimands, complaints and misconduct against the plaintiff that resulted in HR investigating these matters, suspending him for three days, and then threatening his termination. The court is satisfied that these are adverse employment actions. *See MacKenzie v. City and County of Denver*, 414 F.3d at 1279 ("MacKenzie's 'below expectations' job performance rating and one-day suspension . . . are adverse employment actions"); *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005) (a reprimand is an adverse employment action "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities."); *Equal Employment Opportunity Commission v. JBS USA LLC*, 339 F. Supp. 3d 1135, 1187 (D. Kan. 2018) ("certain threats of future adverse action can constitute a materially adverse employment action" under the *Burlington N. & Santa Fe Ry. Co.* standard.), *reconsideration denied*, 2019 WL 4778796 (D. Colo. Sep. 30, 2019). This alleged series of retaliatory supervisory actions by Faherty that resulted in the investigation, plaintiff's suspension and a threatened termination state a plausible claim for retaliation. *See Reinhardt v.*

*Albuquerque Pub. Schools Bd. of Educ.*, 595 F.3d 1126, 1134 (10th Cir. 2010)(protected conduct closely followed by adverse action may be circumstances justifying an inference of retaliatory motive). Thus, the defendant's motion to dismiss count two is granted except for the claim of retaliation based on the alleged adverse employment actions of Faherty reprimanding him, of HR suspending and investigating him for misconduct on Faherty's complaint, and of HR threatening his termination during that investigation.

**Kansas Common-Law Claim of Retaliation—Count Three**

The plaintiff alleges "protected activity by reporting safety issues and other workplace concerns to corporate management and outside the facility." ECF# 10, ¶ 88. He further alleges reporting that "safety rules" were being applied unfairly and inconsistently based on race and that Pentair had committed "workplace safety violations that created increased danger for him and his co-workers." *Id*. at ¶¶ 90-92. The plaintiff asserts his reports qualifies as protected activity under Kansas statutes that authorize the Secretary of Labor to investigate business and order changes for the safety and protection of employees. *Id*. at ¶ 93. He also points to a Kansas statute that prohibits an employer from discharging or discriminating against an employee who testifies before, signs a petition, or is "instrumental in bringing to the" Secretary of Labor "any matter of controversy between the" employer and employee. He finally alleges that because of his reporting of

"safety and other workplace issues" Pentair denied him "employment opportunities and other benefits as well as relief from a hostile work environment." *Id.* at ¶ 95.

Pentair wants the court to dismiss this count because the plaintiff has failed to allege the clear violation of a state law, rule or regulation. "[G]eneral allegations of 'safety issues and other workplace concerns' are simply not sufficient to establish a plausible claim for retaliation under Kansas common law." ECF# 14, p. 15. In response, Ross argues that K.S.A. 44-615 "makes it unlawful to discharge or discriminate in any way against an employee," and that he "exercise[d] free speech regarding safety concerns that were not being addressed by management which significantly increased the risk of work-related injuries and racially discriminatory treatment as it pertained to safety violations." ECF# 16, p. 11. In the plaintiff's judgment, "[a]ny matter that relates to work related injuries, discrimination or retaliation is a matter of public policy." *Id.* Pentair replies that this is not the law in Kansas and that more is required to allege a retaliation claim for whistleblowing.

The plaintiff's conclusory allegations of "safety rule" violations are indistinguishable from allegations found in other cases where the courts have dismissed such claims:

> A whistleblowing claim under this tort "must be based on violations of specific and definite rules, regulations, or laws." *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 822–23 (Kan. 2003) ("It would be both troublesome and unsettling to the state of the law if we were to allow

a retaliatory discharge claim to be based on a personal opinion of wrongdoing."); *see Diebold v. Sprint/United Mgmt. Co.*, No. 01-2504-KHV, 2002 WL 1071923, at *3 (D. Kan. Apr. 29, 2002) (collecting cases where plaintiffs clearly identified allegedly unlawful action giving rise to whistleblowing).

. . . .

Plaintiff cites two provisions of Kansas law, but provides no additional facts in his allegations which would explain how defendants violated any law relating to "safety issues and other workplace concerns." The first of plaintiff's cited provisions is Kan. Stat. Ann. § 44-636, which provides the secretary of labor the power to inspect businesses for violations of occupational health and safety regulations, and further provides notice, hearing, and penalty provisions when a violation is found. See Kan. Stat. Ann. § 44-636. The second provision is Kansas's general bar against retaliatory discharge based on an employee's involvement in protected conduct as a witness or litigant in an employment investigation. Id. § 44-615. Plaintiff neither identifies any conduct by defendants that violated either of these statutes, nor which conduct by defendants he actually reported and why. Such general allegations of workplace safety violations, absent any specific violation by defendants giving rise to the report, are not sufficient to show a plausible claim for retaliation.

Because plaintiff has not clearly alleged a violation of specific and definite rules, regulations, or laws by defendants, the court dismisses plaintiff's state law claim for retaliatory discharge in violation of public policy.

*Palmer v. Pentair*, 2019 WL 3239350, at *4, *8 (D. Kan. Jul. 18, 2019); *see*

*Williams v. CoreCivic, Inc.*, 2019 WL 7372002, *11-*12 (D. Kan. Dec. 31,

2019) (allegations of "safety issues" or practices as "illegal under Kansas

law" without pointing to specific conduct constituting a violation of a rule,

regulation, or law fails to state a prima case of retaliatory discharge); *Ross*

*v. Pentair*, 2019 WL 6700402, at *5 (D. Kan. Dec. 8, 2019)(Without factual

allegations "about what safety rules were violated, the time frame of those

violations, to whom he reported them, or what steps he took to report

them," the plaintiff has not stated a plausible claim for relief). These cases

and their holdings are on all fours with what the plaintiff alleges here. The factual allegations here do not move the state law claim from conceivable to plausible. The court grants the motion to dismiss this count.

IT IS THEREFORE ORDERED that the Pentair's motion to dismiss (ECF# 13) is granted except for the plaintiff's count two retaliation claim under Title VII and § 1981 based on the alleged adverse employment actions of Faherty reprimanding him, of HR suspending and investigating him for misconduct on Faherty's complaint, and of HR threatening his termination during that investigation. In all other respects, Pentair's motion is granted.

Dated this 3rd day of March, 2020, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge