IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONY B. ROSS,

                    Plaintiff,

      vs.                                      Case No. 19-2690-SAC

PENTAIR FLOW TECHNOLOGIES, INC.,

                    Defendant.

MEMORANDUM AND ORDER

          This employment discrimination case comes before the court on the parties' cross motions for summary judgment.  (ECF## 40 and 42). The plaintiff Tony B. Ross ("Ross") filed this action asserting his employer, the defendant Pentair Flow Technologies, Inc. ("Pentair"), discriminated and retaliated against him in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and state common-law retaliation laws. The alleged unlawful practices occurred while Ross was employed as a utility blaster at Pentair. Ross worked as a utility blaster from May 23, 2018, until he bid out into a maintenance assistant position on July 1, 2019, and he continues in that position today. ECF# 38, Pretrial Order, pp. 2-3. Ross filed this action on July 31, 2019, in the District Court of Wyandotte County, Kansas. The action was removed on November 11, 2019. ECF# 1. He filed an amended complaint on December 17, 2019. ECF# 10.

         Early in this case, Pentair filed a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss. ECF# 13. When the parties finished their briefing of this motion, the court ruled dismissing the plaintiff's count one of discrimination, count three of state common-law retaliation, and count two of Title VII and § 1981 retaliation except for

1

those claims based on the alleged adverse employment actions taken by his former

supervisor Faherty in reprimanding him, by Pentair's Human Resources ("HR") in

suspending and investigating him for the misconduct charged in Faherty's complaint,

and by HR personnel in threatening his termination during that investigation. ECF# 18,

p. 31. Ross did not file a motion asking the court to reconsider its order. Ross also

never filed a motion to amend his claims. Thus, the pretrial order states these same

three claims as the plaintiff's "legal claims." ECF# 38, p. 11.

The pretrial order presents what the court understands to be an

unresolved and dispositive dispute over whether Ross has stated another claim for

relief. Besides the three paragraphs of retaliation claims that parallel the court's

order, the plaintiff has added to his legal claims in the pretrial order a fourth

paragraph which states, "Plaintiff has been subjected to harassment and a hostile

work environment due to the treatment he received from Pentair management during

the applicable time period." ECF# 38, p. 11. The pretrial order reflects that Pentair

does not consent to or waive its objection to the plaintiff bringing this new claim.

Instead, Pentair argues that Ross has not pleaded and may not assert now "claims for

harassment and/or hostile work environment under Title VII or Section 1981." ECF#

38, p. 12. The court does not read the pretrial order as the magistrate judge having

decided this legally dispositive issue. This reading is sustained by the following

provision in the pretrial order:

> 6. **AMENDMENTS TO PLEADINGS.**
> None. On March 3, 2020, U.S. District Judge Sam Crow dismissed Counts I and III
> of Mr. Ross's Amended Complaint, as well as Count II of Mr. Ross's Amended
> Complaint except for Count II as based on the alleged adverse employment
> actions of Mr. Ross's former supervisor reprimanding him, of Pentair's Human
> Resources personnel suspending him and investigating him for misconduct on

his former supervisor's complaint, and of Pentair's Human Resources personnel threatening Mr. Ross's termination during that investigation. (ECF 18). Thus, the only remaining claim for summary judgment and trial purposes is Count II for retaliation in violation of Title VII and Section 1981 based on these three alleged adverse employment actions.

ECF# 38, p. 16. The court understands the magistrate judge's pretrial order as preserving for the district court's ruling the legally dispositive issue whether the plaintiff may properly proceed with his new claim for relief.

Because this ruling will impact the scope of material facts, the court takes up this dispositive procedural issue first. The court summarily rejects the plaintiff's contention that he had already alleged a claim for harassment and hostile work environment. The court's order deciding Pentair's Rule 12(b)(6) motion addressed in detail not only the plaintiff's factual allegations but also the alleged acts/claims of discrimination and retaliation. The court referred to the plaintiff's general factual allegation in ¶ 65 that "Ross 'continues to work in a hostile environment that causes him fear, stress and anxiety.'" ECF# 18, p. 4. The court plainly did not construe this allegation or any other in his complaint to assert a separate and definite claim for relief based on a hostile work environment. The plaintiff's amended complaint was replete with conclusory allegations about which the court was critical and even noted that there were many "factually threadbare legal conclusions devoid of a factual context from which to draw reasonable inferences." *Id.* at p. 10. In opposing the defendant's motion, Ross did not raise or argue that he had alleged any separate claim for harassment/hostile work environment. ECF# 16. Nor did he specifically discuss the adequacy of his allegations against the elements for such a claim. *Id.* The court's ruling plainly shows it did not

3

consider or understand the plaintiff to have brought a separate claim for harassment/hostile work environment. The court dismissed the entirety of counts one and three and allowed only the retaliation claim alleged in count two based on the three specified adverse actions. Ross never asked the court to reconsider its ruling or its reading of his amended complaint. But as the pretrial order recounts, the case proceeded to discovery on this remaining retaliation claim without the plaintiff ever amending his pleadings. The pretrial order firmly states that the case is regarded as ready for dispositive motions and/or trial on the remaining claims as set out in the district court's original order of dismissal. The plaintiff does not offer any reasonable basis for believing he still has pending a claim for harassment/hostile work environment.

The court also rejects the plaintiff's position that his inclusion of this new claim in the pretrial order settles the question. This is not an instance, as in *Smith v. Board of County Com'rs of County of Lyon*, 216 F.Supp.2d 1209, 1218-19 (D. Kan. 2002), when the defendants failed to object at the pretrial conference and failed to include their specific procedural objections to adding this new claim. Instead, the pretrial order itself establishes that Pentair disputes the legal propriety of the plaintiff including this claim in the pretrial order. It is true that the inclusion of a new claim in the pretrial order generally "is deemed to amend any previous pleadings which did not include that claim." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Unique here is that the magistrate judge summarized in the pretrial order that she had not allowed the plaintiff to amend his pleadings and that she did not consider the pretrial order as stating the plaintiff to have any claims other than

his single claim for retaliation based on three alleged adverse employment actions. ECF# 38, p. 16. For that matter, this case is not like *Smith*, 216 F.Supp.2d at 1218, where the court could read the pretrial order as reflecting the magistrate judge's intention to include a new claim in the pretrial order. Instead, the court reads the pretrial order as the magistrate judge putting this dispositive question before the district court for decision now.

The court therefore takes up the dispositive procedural issue of the plaintiff wanting to add a new claim to the pretrial order. "Because the pretrial order is the controlling document at trial, a plaintiff's 'attempt to add a new claim to the pretrial order [is] the equivalent of asking leave to amend his complaint, and must be evaluated by the court under the standards set forth in Rule 15(a).'" *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (quoting *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)). Besides the Rule 15(a) standards, the court looks to the good cause standards of Rule 16(b)(4) when the "deadline for a motion to amend the pleadings has expired," like here. *Thiongo v. Airtex Manufacturing, LLLP*, No. 19-2783-EFM, 2021 WL 147981, at *2 (D. Kan. Jan. 15, 2021) (citing *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). Rule 16(b)(4) requires a "movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (citation and internal quotations marks omitted). Untimeliness is a proper ground for denying an amendment with the court after looking at the reasons for the delay and the adequacy of the explanation. *Id*. Pentair argues the amendment should be denied

because of Ross's undue delay. It also argues unfair prejudice because the additional claim would involve different elements of proof not shared by the retaliation claim and would require additional discovery to fully explore the different elements of proof. Ross does not respond to any of these arguments or attempt to meet the standards governing Rules 15(a) and 16(b)(4). The court finds nothing of record that would support good cause for the plaintiff not meeting the scheduling deadlines, that would constitute an adequate explanation for the plaintiff's undue delay in waiting until now to add this claim, or that would overcome the defendant's arguments of unfair prejudice. The court denies the plaintiff's effort to amend his claims and add a separate claim for harassment/hostile work environment.

In briefing the dispositive motions, Ross advances even more alleged acts of discrimination/retaliation that were not recognized in the court's prior order and that have not been set out in the pretrial order. These additionally alleged retaliatory/discriminatory acts include that Pentair moved him to a different shift, denied him pay increases, kept him from working in certain areas and from doing some job duties, denied him opportunities for working overtime, hired a similarly situated white employee at a higher rate, imposed discipline in December of 2019, and kept disciplinary actions indefinitely in his employee folder. The court finds that the plaintiff has failed to raise these matters/theories as proper parts of his retaliation claims before the court. To the extent that the plaintiff's briefs could be construed as impliedly seeking leave to amend, the court denies the same for the reasons applied above. Namely, the plaintiff has failed to carry his burden of meeting the standards of Rule 15(a) and 16(b)(4). For this reason, the court concludes these

additional allegations are not part of this case and those facts relevant to them are not material in deciding the summary judgment motions on the retaliation claim remaining in this case.

**SUMMARY JUDGMENT STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding the motion, the court's role is "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court may grant summary judgment for lack of a genuine issue when the evidence is insufficient "for a jury to return a verdict," when "the evidence is merely colorable," or when the evidence "is not significantly probative." *Id.* It follows then that a genuine issue for trial exists when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is met "by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. The burden then shifts to the nonmovant to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a

rational fact finder could find for the nonmovant." *Id.* (internal quotation marks and citations omitted). Such facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

The court applies this standard drawing all inferences arising from the record in the nonmovant's favor. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003). The court does not make credibility determinations or weigh the evidence; these are jury functions. *Id.* at 1216. The Tenth Circuit has counseled the following for summary judgment proceedings in employment discrimination cases:

> [I]n the context of employment discrimination, "[i]t is not the purpose of a motion for summary judgment to force the judge to conduct a 'mini trial' to determine the defendant's true state of mind." *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). Many of the highly fact-sensitive determinations involved in these cases "are best left for trial and are within the province of the jury." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he inquiry [at summary judgment is] whether the evidence presents a sufficient disagreement to require submission to a jury...."). Consequently, "in this Circuit . . . an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's [explanation for the alleged misconduct]." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part); *see Randle*, 69 F.3d at 452 ("[I]f . . . inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

*Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220-21 (10th Cir. 2015).

## STATEMENT OF UNCONTROVERTED FACTS

After sifting through the parties' lengthy filings and confirming their statements against the cited exhibits, deposition excerpts, and affidavits, the court concludes the following to be the material facts over which there is no genuine dispute.

As background, Ross is a 48-year old African American male and military veteran. He previously worked at Pentair's facility in Kansas City, Kansas, from 2013 until his layoff in 2014. Ross started his current employment at Pentair on May 23, 2018, as a Utility Blast Operator, receiving a starting pay of $17.75/hour. He continues working at Pentair's facility in Kansas City, Kansas, as a maintenance assistant receiving $18.70/hour as of December 2020 and working shifts of approximately 6:00 am to 3:30 pm Monday through Friday and occasional weekends. Pentair employs approximately 250 employees at its Kansas City, Kansas location with approximately half of them on the production floor being union employees. During the relevant period, the terms and conditions of Ross's employment were governed by a Collective Bargaining Agreement ("CBA") between it and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union.

From his hiring in May of 2018, Ross's supervisor was Shane Faherty, until February of 2019 when his supervisor became Rob Davies until July 1, 2019, when Ross became a maintenance assistant supervised by Jim Cotton. Ross testified that he had a good working relationship with Davies and continues to have one with Cotton.

The claims remaining in this suit stem from Shane Faherty's supervision of Ross and Pentair's handling of the disputed disciplinary matters. Shane Faherty issued a disciplinary notice dated December 13, 2018, to Ross for blasting the cable on a submersible motor in violation of Rule 31 for excessive scrap and careless workmanship. The notice stated that because of this violation, the disciplinary action

of an incident report was taken. Those signing as having reviewed the notice on December 14, 2018, were Faherty, Ross, a human resources representative, and a union representative. This disciplinary incident report did not result in any change to Ross's job title, rate of pay, or benefits, or in the loss of any salary. Ms. Villanueva, a HR representative with Pentair, testified that disciplinary incident reports are retained for 12 months for possible consideration for any next steps of discipline, and after 12 months the reports may remain in an employee's file but are not to be used as part of the progression of discipline.

Ross complained to Pentair's managers and HR representatives that Faherty had mistreated him in these four ways and that Ross perceived the mistreatment to be discriminatory. Faherty had denied Ross's request for work boots. Faherty told Ross that, "I take care of my good help." Faherty threw items at Ross hitting him to get his attention. Faherty startled plaintiff and checked on him too frequently.

Ross believes he first complained to Pentair about Faherty after Faherty had denied his request for all-purpose work boots and responded that this might be the wrong job for him. This first complaint happened in December of 2018 with Ross going to the office of Faherty's supervisor, Andrew Pepperdine, and complaining about the denial of his request for work boots and how he had been treated. Ross testified he could not recall the exact conversation or whether he expressed feeling discriminated against. Ross considers this meeting with Pepperdine to be his first report of racially discriminatory treatment. After talking with Pepperdine, Ross received his requested work boots.

10

On January 8, 2019, Faherty reported to Pepperdine that he had seen Ross looking at a website on his cell phone during work hours and that when he began asking Ross about this, Ross yelled and became aggressive. Faherty also reported that he had felt threatened and walked away to defuse the situation. This was not the first time that Faherty had counseled employees under his supervision for using their cell phones at work. Ross said in his deposition that Faherty had found him using his cell phone and said this would be written up. Ross also recalled questioning Faherty for what he could be written up for, saying that he was going to tell others at Pentair how Faherty had been treating him, and arguing with Faherty until he left and went back to his office. Ross estimates he was walked off the job about an hour later.

On January 11, 2019, Ross was delivered a suspension notice dated the same day that said he was suspended with pay while human resources investigated the January 8th incident as a violation of Rule of Conduct No. 18 of the Rules of Conduct:  "Threatening, Intimidating, Coercing or Interfering with Others." ECF# 41-11. On that same day, Pentair's HR representatives met with Ross, and Ross has testified that he told them his side of the story about the argument with Faherty. Ross also told them about his concerns over Faherty throwing and hitting him with things to get his attention. During the investigation of these matters, Pentair's HR manager, Kimberly Johnson, learned that Faherty had admitted to throwing items within Ross's sight to get his attention but that Faherty denied hitting Ross. In his deposition, Ross agreed that Faherty stopped throwing items after this January 11th meeting.

At this same meeting, Ross complained about Faherty saying that, "I take care of my good help." HR Manager Johnson learned from the investigation that Faherty admitted making this statement to Ross but also to making this same statement to other employees of different races. HR counseled Faherty against making this statement again.

At this same meeting, Ross recalls HR representative Villanueva saying that "if you think you're going to try to sue or something that—this might not be the—this ain't the job for you." ECF# 41-2, p. 36. Villanueva and HR representative Hamza Ahsan also instructed Ross to write down whenever he had an issue with Faherty. *Id.* at p. 40. The court has listened to the plaintiff's recording of this meeting. After Ahsan instructs Ross to keep a written record of any problems with Faherty, Villanueva adds, "Do you want to continue to work here? Because if you're threatening me that you're going to go file charges on us and to do this, perhaps this is not the right place to be." Ross answers that "he's good" and then Villanueva follows up by pointing out that Faherty will soon join their meeting to discuss co-existing and having an environment where people feel comfortable coming to work instead of threatening each other over involving law enforcement or legal things. Ross responds reiterating his position that Faherty had thrown things hitting him.

The three-day suspension of Ross ended on January 14, 2019, and Ross was presented with a memorandum of "Investigation Summary/Reprimand" upon his return. The memorandum recounted that after completing its investigation of Faherty's report, HR "found that the alleged events and/or actions did occur" in that the January 8th incident between Ross and Faherty happened and "led to Shane

12

[Faherty] feeling threatened by the situation." ECF# 41-14. The memorandum cited

Rule of Conduct Number 18 and concluded with:

> Pentair expects all employees to equally uphold the Company's standards for
> ethics, integrity, and work practices.
> Tony, I have every confidence that the behavior exhibited by you on-site will
> remain respectful and courteous going forward. If there is anything that you
> feel is a concern please see HR and your Union Steward.

ECF# 41-14. Other than the three-day suspension with pay and the written reprimand,

there were no other consequences from this incident that resulted in any change to

the plaintiff's rate of pay, benefits or job title. The plaintiff testified that during the

three-day suspension with pay he missed the opportunity to work additional overtime

of approximately 4 to 6 hours a day. The plaintiff's testimony complaining of other

missed opportunities for overtime and pay increases fails to establish that they are

consequences of this reprimand or are otherwise connected or related to the three

alleged adverse employment actions at issue in this case. Another written

memorandum dated January 14, 2019, reflects that HR met with Faherty and

counseled him to improve practices about which Ross had complained to HR during

their investigation.

On January 29, 2019, Ross signed a grievance that during the

investigation he had complained about Faherty throwing items at him to get his

attention even though he had told Faherty this sudden surprise could trigger his PTSD.

Ross's requested relief was for Faherty to receive the same discipline as he had

received or for his discipline to be reduced. On March 8, 2019, Pentair's HR entered a

memorandum stating that it would dismiss the original discipline in Ross's file and

remove the reprimand so that it would not be held against him in any future progressive discipline. The plaintiff has not effectively controverted this statement.

As of January 29, 2019, Pentair had placed rules restraining Faherty's interaction with Ross, and in February 2019, Davies became Ross's supervisor. Ross had no conversations with Faherty after Davies became his supervisor. But in May 2019, Ross complained to HR that Faherty kept watching him, staring at him, and sending team employees with work orders for him rather than going through his supervisor Davies. In response to this complaint, HR imposed more rules intended to limit Faherty's interactions with Ross.

In August of 2019, Ross complained to HR that Faherty had startled him by jumping out from behind a pole while Ross was operating a forklift. HR imposed more rules that Ross would not work in Faherty's area without first exhausting all other options and that if Ross had to work in Faherty's area then Faherty's supervisor was to be notified and arrange for Faherty to be gone while Ross was in the area.

Other than the January 2019 disciplinary matter that was subsequently dismissed and removed from his disciplinary file, Ross's only other discipline was an incident report on December 12, 2019. This involved a violation of Rule of Conduct No. 14 for not following safety, health and environmental rules or common safety, health and environmental practices. Ross admitted that he and his co-worker, Kurt Klaus, had conducted themselves in violation of this rule. Faherty had seen Ross and Klaus engaged in this conduct while walking between buildings. Instead of stopping and addressing Ross and Klaus, Faherty reported them to Pentair's safety specialist. Pentair issued the same incident discipline report against both Ross and Klaus. This

14

report did not cause any change to Ross's job responsibilities, title, pay or benefits. The plaintiff has not controverted this statement, and he has not offered any evidence connecting his other allegations to this disciplinary incident or to the remaining claims in this case.

**ANALYSIS**

Section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." *Parker Excavating, Inc. v. Lafarge West, Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). Title VII principles for retaliation claims "apply with equal force" to § 1981 claims. *Id.* (internal quotation marks omitted). Absent direct evidence, the prima facie case under the burden-shifting framework applies. Both parties agree this burden-shifting framework applies here. To state a prima facie case of retaliation under Title VII, a plaintiff would need to prove that he: (1) engaged in protected opposition to discrimination, (2) sustained what a reasonable employee would find to be a materially adverse action, and (3) has evidence supporting a reasonable inference of a causal connection between the protected activity and the materially adverse action. *Id.* at 1220.

Pentair first seeks summary judgment arguing that none of the three acts—Faherty's reprimands in December 2018 and January of 2019, the three-day suspension with pay of Ross while Pentair's HR investigated Faherty's complaint in January of 2019, and HR's alleged threat to terminate during the January 2019—constitute what a reasonable employee would find to be materially adverse actions. In its prior order, the court laid out the relevant circuit decisions governing this issue

and noted first that a broad definition of adverse employment action further the statutory purposes:

> We have stated that adverse employment actions "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (internal quotation and citation omitted). We have also recognized that monetary losses take a variety of forms including shifts in compensation or benefits. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

*Orr v. City of Albuquerque*, 417 F.3d 1144, 1150 (10th Cir. 2005). "In so defining the phrase, we consider acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (internal quotation marks and citation omitted). The Tenth Circuit takes "a case-by-case approach" looking at the factors unique to the situation, but without considering what are "mere inconvenience[s] or an alteration of job responsibilities." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks and citation omitted).

An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). On the other hand, an actionable adverse action is not everything that makes an employee unhappy. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005), abrogated on other grounds by, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). "'[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 68.). This standard looks to a reasonable person in the plaintiff's position considering all relevant circumstances, and so it is "an objective inquiry that does not turn on a plaintiff's personal feelings about the circumstances." *Semsroth v. City of Wichita*, 555 F.3d 1182, 2284 (10th Cir. 2009).

In *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010), the Tenth Circuit held that, "'Title VII protects individuals "not from all retaliation" but only from retaliation "that produces an injury or harm"' that itself raises to a "'level of seriousness.'" *Id.* (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007) (quoting in turn *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 67)). Thus, requiring a level of adversity that a reasonable employee would regard materially adverse "is necessary to separate significant from trivial harms, petty slights, minor annoyances, and simple lack of good manners, . . . [and] [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like." *Id.* (internal quotation marks and citations omitted).

<u>Faherty's reprimands in December 2018 and January 2019</u>. A reprimand is an adverse employment action "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005). The 2018 disciplinary incident report did not result

in any change to Ross's job title, rate of pay, or benefits, or in the loss of any salary. Ms. Villanueva, a HR representative with Pentair, testified that disciplinary incident reports are retained for 12 months to be considered for any next steps of discipline, and after 12 months the reports may remain in an employee's file but are not to be used as part of the progression of discipline. Ross fails to allege how this single incident report could have any bearing on his likelihood of being fired or could harm his future employment prospects. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1270 (10th Cir. 2005). This single report did not put him into at-risk status. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006), *abrogation on other grounds recognized by, Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012); *see Olson v. Shawnee County Bd. of Com'rs*, 7 F.Supp.3d 1162, 1206 (D. Kan. 2014); *Boese v. Fort Hays State University*, 814 F.Supp.2d 1138, 1148 (D. Kan. 2011), *aff'd*, 462 Fed. Appx. 797 (10th Cir. 2012). The presence of the second reprimand in January 2019 would create a closer question, but Pentair eventually rescinded and removed it from Ross's file before he sustained any tangible employment harm. "[A]n employer's decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1151 n.7 (10th Cir. 2005). Under this precedent, a reasonable employee in the plaintiff's circumstances would not regard this single incident report for performance and the subsequently withdrawn incident report for behavior as materially adverse actions that would dissuade him/her from complaining about discrimination.

18

Suspension with pay during HR's three-day investigation. "[S]uspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 803 (6th Cir. 2004), *aff'd sub nom.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see Juarez v. Utah*, 263 Fed. Appx. 726, 737 (10th Cir. 2008) (affirmed district court holding that paid administrative leave pending investigation would not be a material adverse action to a reasonable employee); *Parker v. United Airlines, Inc.*, No. 19-CV-00045-BSJ, 2021 WL 3206777, at *5 (D. Utah June 28, 2021) (a suspension with pay during investigation is not materially adverse to plaintiff), *appeal filed,* (10th Cir. Jul. 28, 2021); *McBride v. Medicalodges, Inc.*, Nos. 06-2535-JWL, 06-2536-JWL, and 06-2538-JWL, 2008 WL 2699905, at *7 (D. Kan. Jul. 3, 2008) (paid suspension pending an investigation was not an adverse action). Ross argues, however, that he missed opportunities for working overtime those three days. This loss of overtime, however, did not happen because Pentair took any additional actions against Ross. Instead, the loss of overtime was simply a consequence of Pentair's suspension with pay. The court agrees with the Second Circuit's holding on this issue:

> As the majority did in *Joseph* [*v. Leavitt*,], 465 F.3d [87] at 91 [(2d Cir. 2006)], we reiterate today that a suspension with pay may sometimes rise to the level of an adverse employment action. In the record of this case, we do not have before us a basis for recognizing an exception. Brown argues that his case constitutes such an exception. We now address why it does not.
> Taking his cue from our language that a suspension with pay pending an "investigation does not, without more, constitute an adverse employment action," *id*. at 91 (emphasis added), Brown argues that his loss of overtime pay should be sufficient to clear the bar set by Joseph. As pointed out by the district court, Brown's loss of overtime pay was a direct result of his suspension with pay, not an additional action taken by his employer. We agree. It would

be absurd if the rule in *Joseph* turned on whether a plaintiff has in the past earned overtime pay.

*Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012); *see also Ugrich v. Itasca County, Minnesota*, No. 16-1008, 2017 WL 4480092, at *3 (D. Minn. Oct. 6, 2017). Ross cannot prove that his suspension with pay with missed overtime constitutes an adverse employment action.

HR's alleged threat to terminate during the January 2019. As noted above, the court reviewed not only Ross's deposition testimony about HR representative Villanueva's statement but also Ross's recording of this meeting. The context for Villanueva's statement plainly confirms that she was reiterating the importance of Ross understanding and appreciating his part in improving the workplace environment and that meant having a positive cooperative attitude rather than responding with personal attacks and threats to sue. Pentair's HR representatives had just reminded Ross to keep them informed about Faherty's actions so that they could help him in dealing with any ongoing problems. Villanueva followed up immediately by asking if Ross still wanted to continue working there because if he was threatening her with filing charges now then "perhaps this is not the right place to be." When Ross promptly responded that he was "good," Villanueva again put her comment into context by saying that the next thing to happen would be for Faherty to join this meeting and to discuss together how "we're going to co-exist" and how to have an "environment where people feel comfortable" coming to work and are "not threatening each other" with "legal things." The record simply does not create a genuine question of material fact that a reasonable employee in Ross's position hearing Villanueva's statements in this context would understand them to be

a threat to terminate him. Instead, the statements would have been understood as Ross being told that HR was there to hear and investigate his complaints and that a positive working environment would not be fostered if he continued making personal threats to sue.

Even assuming that Villanueva's statement could be understood differently, at most, this is an unrealized and undocumented threat which does not constitute any material adverse action. *See Schmidt v. GPI-KS-SB, LLC*, No. 13-2381-KHV, 2014 WL 5431157, at *8 (D. Kan. Oct. 27,2014) (citing *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005)). Even when construed in the subjective negative light argued by Ross, Villanueva's words are no more than derogatory or annoying comments or passing trivial slights that would not deter a reasonable employee from complaining about discrimination. *See Winn v. K.C. Rehabilitation Hosp., Inc.*, No. 13-2423-DDC, 2015 WL 6804045, at *25 (D. Kan. Nov. 5, 2015)(mangers' negative comments about the plaintiff employee's pending lawsuit were no more than "a petty slight or minor annoyance" and thus not actionable adverse actions). Indeed, Pentair's HR representatives were openly encouraging Ross to bring all his complaints to them for investigation and action. As Pentair points out, Ross was not dissuaded from bringing later complaints about Faherty to HR which resulted in HR imposing more rules that limited Faherty's interaction with Ross. "[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Somoza v. University of Denver*, 513 F.3d 1206, 1215 (10th Cir. 2008).

21

Therefore, without more, a rational trier of fact could not find that these alleged adverse actions, individually or together, would be what a reasonable employee would find to be materially adverse. The defendant is entitled to summary judgment on the plaintiff's remaining claims of retaliation under Title VII and § 1981, as the plaintiff is unable to carry his burden of coming forward with sufficient evidence of retaliation for a rational jury to return a verdict in his favor.

IT IS THEREFORE ORDERED that the Pentair's motion for summary judgment (ECF# 40) is granted, and Ross's motion for partial summary judgment (ECF# 42) is denied.

Dated this 10th day of September, 2021, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge